ADOLPH HANSLIK COTTON COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent ADOLPH HANSLIK and JEWELL W. HANSLIK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Adolph Hanslik Cotton Co. v. Commissioner
Docket Nos. 352-76, 7636-76, 7639-76.
United States Tax Court
T.C. Memo 1978-394; 1978 Tax Ct. Memo LEXIS 119; 37 T.C.M. (CCH) 1639; T.C.M. (RIA) 78394; October 2, 1978, Filed Clarence P. Brazill, Jr., and John A. Freels, for the petitioners. Frank C. Hider, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: In these consolidated cases respondent determined deficiencies in petitioners' Federal income taxes for 1973 and 1974 and a negligence penalty [1]/ for 1974 in the following amounts: Addition to Tax Petitioner
Year
Deficiency
(sec. 6653(a)) [2]/
Adolph Hanslik
Cotton Co.
(dkt. No. 352-76)
1973
$ 99,000.00
0
Adolph Hanslik
Cotton Co.
(dkt. No. 7636-76)
1974
$ 98,999.99
$ 4,950.00
Adolph Hanslik and
Jewell W. Hanslik
(dkt. No. 7639-76)
1974
$ 12,143.51
0
*120 The only issue for decision [3]/ is whether certain payments made by petitioner Adolph Hanslik Cotton Company to petitioner Adolph Hanslik in 1973 and 1974 were compensation, reasonable in amount, so as to be deductible by the company under section 162(a)(1). FINDINGS OF FACT At the time its petition was filed, petitioner Adolph Hanslik Cotton Company (hereinafter sometimes referred to as Hanslik Company or the company), was a corporation organized under the laws of the State of Texas with its principal office in Lubbock, Texas. Hanslik Company filed its Federal income tax returns for 1973 and 1974 with the Internal Revenue Service, Dallas, Texas. At the time their petition was filed, petitioners Adolph Hanslik (hereinafter *121 sometimes referred to as petitioner or Hanslik) and Jewell W. Hanslik, husband and wife, were legal residents of Lubbock, Texas. They timely filed their 1974 joint Federal income tax return with the Internal Revenue Service, Dallas, Texas. Hanslik was born in 1917 on a cotton farm in Texas and worked there until 1939. After attending a commercial college and serving in the U.S. Army, Hanslik in 1946 went to work classing cotton for Otto Goedecke Company. While continuing his classing duties through 1947, he took a course in cotton grading and marketing at Texas A & M University. In his travels for Otto Goedecke Company, he became thoroughly familiar with cotton mills and their processes. By 1948, Hanslik had worked his way up from an assistant classer, separating the different varieties of cotton, to the position of a specialty buyer of cotton, i.e., a buyer of nondescript cotton, split cotton, in-between grades, below grades, and outside grades. From 1952 through 1954, Hanslik was a commission buyer, not only for Otto Goedecke Company, but also for other firms. In September 1954, Hanslik went into business for himself in Lubbock, Texas, with a $ 250,000 line of credit *122 on a $ 20,000 margin at the First National Bank of Lubbock. Hanslik, realizing that he could not successfully compete with other cotton merchants due to his small line of credit, decided to go into specialty buying of cotton where he could make larger profits on a lower volume of sales. During November 1958, Hanslik Company was incorporated as a cotton merchandising business for export and domestic sales. Thereafter and to the date of the trial, Hanslik operated the business primarily as an export shipper. [4]/ As an export shipper, Hanslik purchased cotton from several supply sources in West Texas, including cotton farmers, cotton gins, F.O.B. merchants, or other shippers. He then resold the cotton in foreign countries, mainly in Southeast Asia, Japan, Europe, and South Africa. In West Texas the buying season for the export shipper starts in November and runs through March, with the heaviest buying normally in December. West *123 Texas cotton is generally a low grade cotton because of short growing seasons and cold nights on the high plains. West Texas cotton is below the quality of the cotton traded on the New York Cotton Futures Market, but it is more competitive on the world market due to its lower price. F.O.B. merchants buy and sell cotton daily from cotton farmers or cotton gins. The F.O.B. merchant frequently buys and sells cotton when the New York Cotton Futures Market is closed (i.e., from the time the market closes in the afternoon until the time it opens in the morning) to avoid risks of market price fluctuations. The F.O.B. merchant, operating on a high volume of sales and low profit margin, tries to maintain an average profit of $ 2 per bale. The export shipper buys and sells cotton before the cotton is harvested and is therefore subject to greater risk than an F.O.B. merchant due to exposure to market price fluctuations. The shipper, in contrast with the F.O.B. merchant, operates on a relatively low volume, high profit margin basis. An export shipper tries to maintain an average profit of $ 20 per bale sold. In 1963 Hanslik's marriage to his former wife ended in divorce. At that time *124 he and his wife had an approximate net worth of $ 750,000 in business properties and real estate, consisting of four grain warehouses, 6,000 acres of land, and his stock in Hanslik Company. Business at that time was very good. Sometime in 1964 or thereafter a manager of Hanslik's grain warehouses misappropriated $ 120,000 in grain and resigned suddenly. Even though Hanslik was in no way at fault, in accordance with Federal regulations, a United States Government agency canceled Hanslik's license and surety bond. As a consequence, Hanslik lost his line of credit at the First National Bank of Lubbock. During the period 1964 through 1971, Hanslik was be signed with further legal problems. He was called upon to pay off a $ 30,000 guaranty to the First National Bank of Lubbock and was sued by his former wife for $ 400,000. The cumulative effect of adverse circumstances occurring from 1964 through 1970 caused Hanslik to individually file for bankruptcy in early 1971. He was discharged in April of that year. In January 1972, West Texas cotton was in long supply and there was a sharp drop in its price. In the spring of 1972, Hanslik and W. K. Wong (hereinafter Wong), a Chinese *125 independent contractor engineer and president of Ideal Trading Company, traveled throughout the Far East trying to sell cotton but there was no market. Upon arrival in Bangkok, Thailand, Hanslik decided to go to Bangladesh. He arrived in Dacca on the same day that the United States Government announced that it would give a foreign aid subsidy to Bangladesh for the purchase of 100,000 bales of cotton. Hanslik and Wong immediately went to Bangladesh Textile Corporation, a large purchaser of cotton, to establish business contract. In addition, Hanslik contacted various agents and executed agreements with three different cotton agents in Bangladesh to represent Hanslik d/b/a Hanslik Company when the buying began under the United States foreign aid subsidy. Through Hanslik's decisiveness, skill, and innovative bidding, the company obtained a contract from Bangladesh Textile Corporation to buy 41,000 bales of cotton. Hanslik's knowledge of where to buy specialty types of cotton, his foresight in having samples of the specialty types that the mills of Bangladesh wanted, and his knowledge of how to handle the technicalities and paper work connected with the Bangladesh sale were of material *126 assistance in enabling him to obtain the contract. Hanslik sold 41,000 bales of cotton for a total price of approximately $ 5,500,000. The United States Government confirmed the sales contracts and required Hanslik to furnish shipping commitments for cotton to be purchased in the United States. Since Hanslik Company did not have a sufficient line of credit to buy the needed cotton to fill the sales contracts, Hanslik went to the First National Bank of Lubbock with the confirmed forward sales of approximately $ 5,500,000 and requested credit. The bank would not finance Hanslik directly and suggested that he obtain financial backing from Tom W. Wood (hereinafter Wood). Hanslik got Wood to finance part of the sale by putting up $ 100,000 and real estate as collateral for a $ 2,000,000 line of credit provided by the First National Bank of Lubbock. Hanslik Financed the balance of the $ 5,500,000 in credit required for the deal by paying higher than the market price for the cotton in return for the sellers' agreements to absorb the costs of financing and transportation. The financing arrangement between Hanslik and Wood provided that Wood would receive 50 percent of the net *127 profits of the sales he financed. On December 18, 1972, Wood was paid $ 234,608.28. On December 20, 1972, as a share of the profits on the Bangladesh sale, Hanslik Company paid Ideal Trading Co. a commission of $ 100,000. If Hanslik had had his own line of credit and been able to finance the whole Bangladesh sale himself, financing charges, premium prices, and commission fees in the amount of $ 450,000 would have been saved. In December 1972, after completing the Bangladesh sale, Hanslik began negotiations with the First National Bank of Lubbock for a line of credit for the operation of the company's export business during 1973. The bank was aware of Hanslik's discharge from bankruptcy in April 1971. However, based upon the bank's knowledge of his business acumen, experience as an export cotton shipper, and the Bangladesh sale in 1972, the bank in January 1973 extended to Hanslik Company a $ 1,000,000 line of credit. By January 1977 that line of credit had been increased to $ 8,000,000. On January 26, 1973, Hanslik executed a guaranty for an "unlimited amount" on any and all indebtedness of Hanslik Company to the bank. This unlimited guaranty continued throughout 1973 and *128 1974. The First National Bank of Lubbock depended solely on Hanslik to conduct the business and satisfy the guaranty. Hanslik Company operates its cotton sales business in the Far East through independent agents, some of whom Wong helped recruit. In 1973 and 1974, 60 percent of Hanslik Company's business was in the Far East and 30 percent in Europe and South Africa. Since 1955 Hanslik has had an agent in Europe, Carl Bindschedler. These agents visit the textile mills in their market locale, solicit sales orders, and transmit the orders to Hanslik Company. Upon presentation of these sales orders to Hanslik Company, Hanslik accepts and confirms those orders which he decides will be profitable for the company. Because the company ordinarily does not have the ordered cotton on hand and the margin of profit is too small for the risk that would have to be taken in many cases, Hanslik accepts only approximately 25 percent of the orders the company receives from its agents. During 1972 through 1975, Hanslik was president and sole stockholder of Hanslik Company; Helmut Wierzba, who did Hanslik's detail work, was vice-president; Charles Smith, who kept Hanslik Company's books, was *129 secretary-treasurer; and Charlotte Haber was receptionist and secretary. During rush seasons, there was also some part-time help. The total payroll for employees other than Hanslik for the years 1973, 1974, and 1975, was approximately as follows: Year
H. Wierzba
C. Smith
All Others [1]
1973
0
0
$ 40,385
1974
$ 29,500
$ 4,200
19,227
1975
53,726
4,800
22,218
In December 1972 when Hanslik was negotiating with the First National Bank of Lubbock for a line of credit he decided once again to operate his business in regular corporate form. During that period Hanslik discussed his expected salary with his banker, Howard Yandell, and with Helmut Wierzba and Charles Smith. Comparing the responsibilities of his position at Hanslik Company with the responsibilities of his agents in the field and the commissions that he had to pay those agents, [5]/ using the Bangladesh deal as a guide to his worth to Hanslik Company, [6] and projecting that he could greatly increase profits for Hanslik Company in the future, Hanslik set his salary at $ 200,000 per year. However, no formal board of directors *130 meetings were held and no formal record authorizing this nondeferred compensation for Hanslik was made during 1973 and 1974. The volume of sales and profits of Hanslik Company increased in 1972, 1973, 1974, and 1975. The following schedule for the period 1968 through 1975 demonstrates this increase: [SEE TABLE IN ORIGINAL] No dividends were paid or distributed by Hanslik Company during 1968 through 1975. Hanslik Company's business is a "one-man" operation, and the success it has enjoyed has been due primarily to the efforts and expertise of Hanslik. Hanslik's many talents included his ability to identify, class, and purchase West Texas cotton which was actually a better grade than the classification given to such cotton by the *131 Government. As a specialty buyer of cotton, Hanslik had to know the different types of cotton seeds, fertilizers, herbicides, and ginning practices used in the various areas of West Texas; he had to maintain good working relationships with cotton graders, cotton farmers, cotton ginners, F.O.B. merchants, and other cotton shippers, as well as his general agents throughout the Far East, Europe, and South Africa; he had to keep up with the various publications pertaining to the cotton business; and he had to keep a close eye on weather conditions and soil preparation in the West Texas area. Hanslik's experience in buying and selling West Texas cotton, his expertise in the classification of such cotton, his ability to organize a foreign sales force, his acumen in dealing with the market fluctuations and probabilities with respect to both buying and selling cotton, [7]/ his management ability with respect to both buying and selling cotton, his management ability with respect to insurance, shipping and transportation, his ability to avoid or minimize losses on laydowns [8] or outturns, [9] and his ability to arrange for necessary financing by a substantial line of credit, *132 all contributed to Hanslik Company's success. Hanslik had an excellent personal and business reputation. Hanslik Company deducted the following amounts on their 1973 and 1974 corporate income tax returns: 1973
1974
Compensation of officers
$ 200,000.00
$ 233,700.00
Salaries and other wages
40,385.63
19,227.40
Pension and profit-
sharing plan contribu-
tions
56,450.00
58,425.00
During 1973 and 1974 Hanslik *133 Company deducted nondeferred compensation in the amount of $ 200,000 for Hanslik and deducted deferred compensation in the amount of $ 50,000. The latter amount consisted of pension and profit-sharing plan contributions made on Hanslik's behalf. Hanslik Company's profit-sharing plan contributions were based upon 15 percent of salary, and that company's pension trust contributions were based upon 10 percent of salary, for a combined total of 25 percent of salary.
Hanslik's salary of $ 200,000 was not increased for the years 1973 through 1976. However, Hanslik did not draw his entire salary on a monthly basis during those years in order to increase Hanslik Company's cash margin and its line of credit with the First National Bank of Lubbock. On Adolph and Jewell W. Hanslik's 1973 and 1974 joint income tax returns, they reported Hanslik's salary of $ 200,000 from Hanslik Company. In his notice of deficiency issued to Hanslik Company for 1973 and 1974, respondent determined that Hanslik Company was entitled to a deduction in the amount of $ 35,000 for compensation paid to Hanslik in each of those years rather than the amount of $ 200,000 claimed by that company on both its 1973 *134 and 1974 corporate income tax returns. Also respondent determined that Hanslik Company was entitled to a deduction in the amount of $ 15,200 for 1973 (instead of the amount of $ 56,450 claimed) and $ 17,175 for 1974 (instead of the amount of $ 58,425 claimed) for contributions made on behalf of all employees by that company to its pension and profit-sharing plans in those years. Respondent determined the allowable contributions to those plans on the basis of 25 percent of the total direct compensation for both 1973 and 1974. [10]/ In his notice of deficiency issued to Adolph and Jewell W. Hanslik for 1974, respondent determined that $ 165,000 of the $ 200,000 received by Hanslik from Hanslik Company during that year was *135 a dividend distribution made by that corporation and therefore not within the definition of "earned income" under section 1348. Accordingly, respondent determined that the 50-percent maximum tax rate on earned income was not applicable. OPINION The question of whether amounts paid to a shareholder-employee of a closely-held corporation constitute reasonable compensation within the meaning of section 162(a)(1) [11]/ is one of fact, and the burden of proving that the compensation was reasonable in amount is on the taxpayer. ; ; . In determining the amount of compensation deductible by the closely-held corporation, both deferred and nondeferred compensation must be considered together. ; , affd. per curiam . Because Hanslik, the employee to whom the compensation at issue was paid, was *136 the sole shareholder of Hanslik Company and in control of that corporation's affairs, we have carefully studied all the relevant facts. , affg. a Memorandum Opinion of this Court; ; . We do not think it is necessary to analyze in depth the numerous arguments presented by the parties in the instant case or the various factors which we have considered in resolving this issue. Suffice it to say that we do not agree totally with either petitioners or respondent and can find no one factor determinative of the instant controversy. On the basis of the entire record and our evaluation of the testimony of the witnesses, we hold that, of the $ 250,000 *137 paid to Hanslik or set aside for him in pension and profit-sharing plans during 1973, $ 200,000 ($ 160,000 of nondeferred compensation and $ 40,000 of deferred compensation) [12] $ 3 constituted reasonable compensation for the services he rendered during that year. The full amount claimed for 1974 is allowable. As our Findings of Fact indicate, Hanslik was unquestionably a man with a good business reputation. He had many talents and resources in the cotton business, and the success of Hanslik Company during the years at issue was most assuredly due almost exclusively to his decisiveness, skills, and unyielding efforts on behalf of the company. [13]/ After his discharge in 1971 from a bankruptcy brought on by forces over which he had little or no control, Hanslik engineered the Bangladesh sale without the benefit of a line of credit and in such a manner that Hanslik Company reaped sizable profits. After the Bangladesh sale Hanslik secured an invaluable line of credit with the First National Bank of Lubbock, and Hanslik Company *138 continued to grow and prosper in 1973 and 1974. Hanslik almost single-handedly ran the business affairs of Hanslik Company, and the services he performed for that corporation were substantial and continuing, and they ranged from classing and buying cotton and keeping up with soil and weather *139 conditions, the market, and the cotton industry in West Texas, to organizing a foreign sales force which enabled Hanslik Company to sell cotton in the Far East, Europe, and South Africa. Hanslik Company had net income before taxes and deduction of Hanslik's compensation of $ 461,725.65 and $ 1,018,420.60 in 1973 and 1974, respectively. Finally, Hanslik's business experience and reputation enabled the company to arrange a more favorable line of credit, and to secure that credit line he executed an unlimited guaranty with the First National Bank of Lubbock on any and all indebtedness of Hanslik Company. [14]/ On the side favorable to *140 respondent, Hanslik was the sole shareholder and in control of Hanslik Company and that corporation, despite the existence of substantial earnings, did not pay any dividends during the years at issue. See ; , affg. a Memorandum Opinion of this Court. Moreover, although Hanslik's salary for 1973 and 1974 was informally discussed and agreed upon before those years and was not increased thereafter, the dominant figure in fixing his compensation was Hanslik himself. As the company was a "one-man" corporation, so was the decision as to his compensation a "one-man" decision. No board of directors meeting was held to fix and authorize Hanslik's compensation, and no formal record was made to evidence what services the compensation was intended to cover. See , revg. a Memorandum Opinion of this Court (board of directors' action in voting salaries is entitled to presumption that salaries are reasonable); *141 (neither corporate minutes nor board of directors' action made any mention that compensation was intended for past services); (compensation arrangement established 13 years before taxable year cannot be completely ignored in determining reasonable compensation). Compare , affg. a Memorandum Opinion of this Court, cert. denied (compensation plan established by board of directors not accepted in all cases). Also entitled to some weight is the fact that, although Hanslik astutely spearheaded the efforts culminating in the 1972 Bangladesh sale, which was crucial to the future prosperity of Hanslik Company, he was the benefactor of a somewhat fortuitous circumstance, i.e., on the day that he arrived in Bangladesh the United States Government announced that it would give a subsidy to that country to buy cotton. See , affg. a Memorandum Opinion of this Court; *142 (5th Cir, 1951), affg. a Memorandum Opinion of this Court, cert. denied ; . Without that subsidy there is no reason to think the Bangladesh sale would have been made. In summary, the facts clearly show that during 1973 and 1974 Hanslik earned and deserved a large salary for the profits he produced for Hanslik Company. [15]/ However, other facts indicate to us that his total current and deferred salary of $ 250,000 for 1973 was somewhat excessive. The company's gross profits for 1974 were nearly twice the gross profits for 1973, and its net income before taxes and the deduction of Hanslik's compensation for 1974 was more than twice that for 1973. Weighing all the evidence and choosing from among conflicting factual inferences and conclusions, we think that Hanslik Company is entitled to a deduction of $ 160,000 for current compensation and $ 40,000 for deferred compensation paid or set aside for Hanslik in 1973 and $ 200,000 for current and $ 50,000 for deferred compensation for 1974. *143 To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. /↩ Petitioner-corporation concedes that it is liable for the addition to tax under sec. 6653(a) if this Court determines that there is an income tax liability owing for 1974.
2. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue.
3. /↩ The answer to this question relative to the petitioner-corporation will automatically determine Adolph Hanslik's and Jewell W. Hanslik's liability since their liability results from treating the income reported by them as dividend income rather than earned income subject to the 50-percent maximum tax rate under sec. 1348.
4. /↩ Until Jan. 30, 1962, Hanslik Company operated as a corporate entity and filed regular corporate income tax returns. From that date through 1970, the business was conducted through a subchapter S corporation or a sole proprietorship.
1. Includes Helmut Wierzba's and Charles Smith's wages.↩
5. /↩ For example, Hanslik paid Wong and Ideal Trading Company a commission of $ 100,000 on the Bangladesh sale. 6. In the Bangladesh sale Hanslik earned almost $ 500,000, $ 234,680 of which went to Wood and $ 239,865 of which went to Hanslik Company. As stated in the text, Hanslik and Hanslik Company could have made an additional profit of approximately $ 450,000 if Hanslik Company had been able to provide its own financing.↩
7. /↩ During 1973 and 1974, Hanslik Company continued to increase profits even though the market was volatile from 1972 through 1975. As of Jan. 1974, the price of West Texas cotton had risen from a low of approximately 15 cents per pound in 1972 to approximately 75 cents per pound. During 1974, the trend was downward, and during 1975 the trend was upward. As shown by the foregoing table, Hanslik Company continued to operate profitably in such continuing circumstances. 8. A laydown occurs when there is a decline in the market after a purchase and the purchaser refuses to perform, leaving the seller with cotton and a falling market. ↩
9. An outturn is a claim against grade, weight, or taxes of a shipment of cotton.↩
10. /↩ Respondent on brief concedes that Hanslik Company is entitled to a deduction for reasonable compensation paid to Hanslik in the amount of $ 67,000 for 1973 and $ 89,000 for 1974. Correspondingly, respondent on brief concedes that Hanslik Company is entitled to a deduction in the amount of $ 16,750 for 1973 and $ 22,250 for 1974 for contributions made on behalf of Hanslik by that company to its pension and profit-sharing plans in those years.
11. / SEC. 162.TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (1) a reasonable allowance for salaries or other compensation for personal services actually rendered;↩
12. Hanslik Company's pension and profit-sharing plan contributions were based on a combined total of 25 percent of direct compensation.↩
13. / Respondent's brief contains the following acknowledgment of Hanslik's abilities: Respondent recognizes that Adolph Hanslik is demonstrably a man of many talents which contribute to the success of petitioner's export cotton shipping business. Mr. Hanslik's experience in buying and selling West Texas cotton, his expertise in the classification of this cotton, his ability to organize a foreign sales force, his acumen in dealing with the market fluctuations and probabilities with respect to both buying and selling cotton, his management ability with respect to insurance, shipping and transportation, his ability to avoid or minimize losses on laydowns or out-turns, and his ability to arrange for necessary financing by a substantial line of credit, all have contributed to the success of petitioner's business. Also, Mr. Hanslik has an excellent personal and business reputation.↩
14. /↩ See ; . Respondent argues that, since sec. 162(a)(1) allows the deduction for "compensation for personal services actually rendered," the guaranty of the credit line may not properly be considered in finding a "reasonable" amount of compensation. We need not decide that question. Our finding would be the same regardless of whether guarantying such obligations may properly be considered.
15. /↩ In 1973 and 1974 Hanslik Company had gross profits of $ 1,926,641.61 and $ 3,425,272.21, respectively.